UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES KURLANCKI,

       Plaintiff,                                  Hon. Ellen S. Carmody

v.

                                                  Case No. 1:13-cv-223

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On February 10, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #18). Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 57 years of age on his alleged disability onset date. (Tr. 126). He successfully completed college and previously worked as a scheduler/production planner. (Tr. 25, 37). Plaintiff applied for benefits on October 5, 2010, alleging that he had been disabled since October 26, 2009, due to liver disease and swollen extremities. (Tr. 126-34, 161). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 69-125). On November 30, 2011, Plaintiff appeared before ALJ Henry Kramzyk with testimony being offered by Plaintiff, Plaintiff's wife, and a vocational expert. (Tr. 31-68). In a written decision dated December 13, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 17-27). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's chest, taken October 26, 2009, revealed the following:

1. Normal heart size without evidence for edema.

2. Stable right upper lobe bronchiectasis and linear scarring

3

>   which may be postinfectious.
>
> 3. Stable right middle lobe ovoid nodule, which may represent a small granuloma.

(Tr. 214).

On April 7, 2010, Plaintiff was examined by Physician's Assistant Gerald Bush. (Tr. 241-42). Plaintiff reported that he began experiencing "lower lumbar discomfort" after "picking up cement blocks." (Tr. 242). A physical examination revealed the following:

> Back exam shows scattered paravertebral muscle spasms and discomfort bilaterally to the lumbosacral area. Sacroiliacs appear normal. No signs of trauma, injury, or fracture are seen on exam. Deep tendon reflexes are brisk and symmetric bilaterally. Good power, tone, and touch are noted to the lower extremities with good flexion of the great digits. No signs of a cauda equina syndrome are seen. He can heel-and-toe walk with mild discomfort. Straight-leg raise is positive to pain only at approximately 30 degrees bilaterally. He moves with my assistance in a slow but stable fashion through position changes. Rectal exam is clinically deferred at this time. Generally he is alert, in obvious discomfort, and rates his pain at this time as 4 out of 10 on a pain severity system.

(Tr. 241-42). Plaintiff was diagnosed with "acute low back pain/strain" for which he was provided medication. (Tr. 241).

Treatment notes dated September 20, 2010, indicate that Plaintiff was experiencing ascites[1] and "bilateral lower extremity edema secondary to probable hepatic congestion." (Tr. 236-37). The doctor concluded that Plaintiff should participate in a paracentesis procedure "as soon as possible." (Tr. 236). On September 22, 2010, Plaintiff underwent a paracentesis procedure the reason for which was reported as "ascites, alcoholism." (Tr. 203).

---

[1] Ascites is "fluid buildup in the abdominal cavity" and "is the most common major complication of cirrhosis" of the liver. *See* Ascites and Cirrhosis, available at http://www.webmd.com/mental-health/addiction/ascites-as-a-complication-of-cirrhosis (last visited on January 12, 2015).

On September 23, 2010, Plaintiff was examined by Dr. Brij Dewan. (Tr. 219-20). Plaintiff reported that he "has been not feeling well for the last month or so and his chief complaints have been abdominal bloating, distension, pedal edema, a 20-pound weight gain, tiredness, and fatigue." (Tr. 219). With respect to Plaintiff's "personal history," the doctor reported the following:

> The patient smokes 2 packs of cigarettes a day for the last 40 years. He has been consuming 6 to 12 drinks of alcohol, beer, and/or vodka for the last 30 to 35 years. In the last year or so, it has been consistently maybe 12 drinks a day. The patient has no other history of any intravenous drug use or any tattoos. No history of any other high-risk lifestyle.

(Tr. 220). A physical examination revealed the following:

> A 58 years old white gentleman, who weights 171 lbs, ht of 5'10", and BP of 100/62. GENERAL: General physical examination reveals pallor, scleral icterus, and marked 4+ pedal edema, extending all the way to the mid upper thighs. The patient has no asterixis. He does have spider angiomas in the anterior chest wall. He is somewhat slow, but not lethargic, not confusing, or disoriented. LUNGS: Examination of the chest is unremarkable. There is no evidence of any rales or rhonchi at this point. CARDIOVASCULAR SYSTEM: Examination of the cardiovascular system appears to be unremarkable. ABDOMEN: Examination of the abdomen reveals moderate amount of ascites. Liver edge is palpable. On deep inspiration, it appears to be firm in consistency. Spleen is not palpable. There are no other palpable masses. Bowel sounds are normal. There is no marked area tenderness. NEUROLOGICAL EXAMINATION: Neurological examination was unremarkable.

(Tr. 220). The doctor concluded that Plaintiff was "most likely" suffering from cirrhosis. (Tr. 219). The doctor further "advised [Plaintiff] very strongly that he had to stop drinking" and that "if he continues to drink. . .he will die." (Tr. 219).

Treatment notes dated October 7, 2010, indicate that Plaintiff's ascites was "improved" following a paracentesis procedure. (Tr. 230-31). It was further noted that Plaintiff's

bilateral lower extremity edema was "improved." (Tr. 230-31). Treatment notes dated November 3, 2010, indicate that Plaintiff's condition was "improved" and that his ascites was "resolved." (Tr. 225-26). Treatment notes dated November 4, 2010, indicate that Plaintiff had recently stopped consuming alcohol and that his edema had decreased. (Tr. 218). Treatment notes dated November 4, 2010, indicate that Plaintiff's "edema has improved." (Tr. 270).

Treatment notes dated January 20, 2011 indicate that Plaintiff "is only having minimal swelling now in his feet" and only "if [he is] on [his] feet all day." (Tr. 274). Plaintiff also reported that "his symptoms go away quickly and states he has been compliant with following a strict 2 gram daily sodium diet." (Tr. 274). Plaintiff also reported that "he is not drinking any alcohol whatsoever." (Tr. 274).

Treatment notes dated February 10, 2011, indicate that Plaintiff "continues to do fairly well in regards to his fluid retention" and "has not had any trouble with ascites or increasing edema since his last visit." (Tr. 258). Plaintiff also reported that he was experiencing "only minimal lower extremity edema." (Tr. 258). The results of a physical examination were unremarkable including an examination of Plaintiff's lower extremities which revealed "no edema." (Tr. 258). It was further reported that Plaintiff's alcoholic hepatitis was "improved." (Tr. 258).

Treatment notes dated February 17, 2011, indicate that Plaintiff was experiencing "no peripheral edema." (Tr. 264). It was further noted that Plaintiff's "portal hypertension/cirrhosis [was] clinically stable." (Tr. 264). Plaintiff's depression was also noted to be "slightly improved" since beginning medication. (Tr. 264). Treatment notes dated June 16, 2011 indicate that Plaintiff was experiencing "no edema" and that his alcoholic liver disease was "clinically stable." (Tr. 268). Treatment notes dated June 21, 2011 indicate that Plaintiff was "feeling good" and "continues to

abstain from alcohol." (Tr. 272). Plaintiff also reported that his "edema is much better and overall he feels much improved." (Tr. 272).

At the administrative hearing, Plaintiff testified that he was unable to work due to "the swelling and the pain in my legs." (Tr. 41). Plaintiff reported that he has to "sit in a recliner with [his] legs elevated at least 50 percent of the day, maybe two-thirds of the day." (Tr. 42). Plaintiff characterized the pain in his lower extremities as 9 on a scale of 1 to 10. (Tr. 43). Plaintiff reported that he only takes Ibuprofen to treat this pain and does not experience any side effects from his other medications. (Tr. 43-44). Plaintiff testified that he can lift 20 pounds and can carry 10 pounds. (Tr. 45). Plaintiff reported that he was able to walk one-third of a mile before having to sit and rest. (Tr. 46). Plaintiff reported that he performs various "chores around the house," including washing laundry, cleaning, cooking, and washing dishes. (Tr. 47).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) cirrhosis; (2) history of alcohol abuse; and (3) portal hypertension, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19-21). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; (2) he can stand/walk up to six hours during an 8-hour workday; (3) he can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (4) he can frequently balance, stoop, crouch, kneel, and crawl; and (5) he must avoid

concentrated exposure to extreme cold and unprotected heights. (Tr. 21).

At the administrative hearing, a vocational expert testified that if limited to the extent reflected in the ALJ's RFC determination, Plaintiff would be able to perform his past relevant work as a scheduler/production planner. (Tr. 59-65). The vocational expert further testified that there existed in the region approximately 9,580 other jobs which Plaintiff could perform consistent with his RFC. (Tr. 65). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The ALJ Properly Discounted Plaintiff's Subjective Allegations**

As noted above, Plaintiff testified at the administrative hearing that his ability to function was more limited than the ALJ ultimately recognized. Plaintiff argues that he is entitled to relief because the ALJ improperly rejected his subjective allegations of pain and limitation.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an

9

> underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law

judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

In assessing Plaintiff's credibility, the ALJ concluded that Plaintiff's administrative hearing testimony was contradicted by the evidence of record. (Tr. 23-24). Specifically, the ALJ noted that while Plaintiff testified that he had to elevate his legs "at least 50 percent of the day," the medical record revealed that Plaintiff's ascites and edema resolved once Plaintiff discontinued drinking and began receiving appropriate treatment. (Tr. 24). As for Plaintiff's assertion that he suffers disabling pain, the ALJ observed that this testimony was contrary to the medical evidence of record as well as Plaintiff's testimony that he only takes ibuprofen to treat his pain. (Tr. 24). In sum, the ALJ's decision to discount Plaintiff's subjective allegations complies with the aforementioned legal standard and is supported by substantial evidence.

**II.         The ALJ Properly Evaluated the Medical Evidence**

On February 11, 2011, Physician's Assistant Gerald Bush authored a letter to Plaintiff's attorney in which he stated that Plaintiff's "ability to perform sustained 8-hour, five-day a week responsibilities. . .would be challenged by having to rest and elevate his legs at least once in the morning and once in the afternoon." (Tr. 260). Plaintiff asserts that he is entitled to relief because the ALJ failed to accord sufficient weight to Bush's opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the

ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The Court is not persuaded by Plaintiff's argument. First, Bush did not articulate any specific functional limitations from which Plaintiff allegedly suffers. Rather, Bush merely opined that Plaintiff would be "challenged" by working an 8-hour day. Such an observation is not inconsistent with the ALJ's RFC determination.

Second, Bush, a physician's assistant, is not considered an acceptable medical source, thus his opinion is not entitled to any special deference. *See* 20 C.F.R. §§ 404.1502; 404.1513(a); *Dykes v. Colvin*, 2014 WL 585319 at *3 (W.D. Ky., Feb. 13, 2014). The requirement that an ALJ articulate "good reasons" for affording less than controlling weight to a care provider's opinion only applies to opinions rendered by acceptable medical sources. *See, e.g., Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007).

Nevertheless, physician's assistants and other unacceptable medical sources, are permitted to offer statements regarding "the severity of [a claimant's] impairment(s) and how [such]

affects [his] ability to work." *See*, *e.g.*, 20 C.F.R. §§ 404.1513(d); 416.913(d). When evaluating a statement from an unacceptable medical source, the ALJ is not required to assess such pursuant to the factors articulated above. *See*, *e.g.*, *Gayheart*, 710 F.3d at 378 ("[t]he factors set forth in 20 C.F.R. § 404.1527. . .apply only to medical opinions from acceptable medical sources"). Instead, the ALJ is required simply to "consider" statements from unacceptable medical sources. *See*, *e.g.*, *Gayheart*, 710 F.3d at 378 (quoting Social Security Ruling 06-03P, 2006 WL 2329939 at *4 (S.S.A., Aug. 9, 2006)).

The ALJ considered Bush's statement and found that it was "inconsistent with" the medical evidence. As noted above, the medical record indicates that Plaintiff's condition improved significantly once he discontinued drinking and began receiving appropriate treatment. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  February 13, 2015                           /s/ Ellen S. Carmody
                                                                ELLEN S. CARMODY
                                                                United States Magistrate Judge